**No. 15-1779**

_____

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

TAMESHA MEANS,
*Plaintiff-Appellant*,

v.

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, ET AL,
*Defendants-Appellees.*

_____

*On Appeal from the United States District Court for the Western District of
Michigan
Case No. 1:15-cv-00353 (Hon. Robert Holmes Bell)*

_____

**DEFENDANT-APPELLEE UNITED STATES CONFERENCE OF
CATHOLIC BISHOPS' BRIEF ON APPEAL**

_____

Cameron R. Getto
ZAUSMER, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334
(248) 851-4111/Fax: (248) 851-0100
cgetto@zacfirm.com

Attorney for Defendant-Appellee United States
Conference of Catholic Bishops

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Defendant/Appellee United States Conference of Catholic Bishops states that it not a subsidiary or affiliate of any publicly owned corporation. The Conference is unaware of any publicly owned corporations, with respect to the claims asserted against the Conference, that have a financial interest in the outcome of this litigation.

/s/ Cameron R. Getto
Cameron R. Getto
ZAUSMER, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334
(248) 851-4111/Fax: (248) 851-0100
cgetto@zacfirm.com
Attorney for Defendant-Appellee United States Conference of Catholic Bishops

Dated: March 17, 2016

i

# <u>TABLE OF CONTENTS</u>

Corporate Disclosure..................................................................i

Table of Contents ............................................................ ii, iii

Table of Authorities ...................................................... iv, v, vi

STATEMENT REGARDING ORAL ARGUMENT ................................................1

JURISDICTIONAL STATEMENT ........................................................2

COUNTER-STATEMENT OF THE CASE ..................................................3

COUNTER-STATEMENT OF STANDARDS OF REVIEWS ...........................11

SUMMARY OF ARGUMENT ............................................................13

ARGUMENT ........................................................................15

I.     THERE IS NO BASIS FOR THE U.S. DISTRICT COURT IN MICHIGAN TO ASSERT PERSONAL JURISDICTION OVER THE USCCB ....................................................................15

     A. THERE IS NO GENERAL PERSONAL JURISDICTION OVER THE USCCB ..................................................................15

     B. THERE IS NO SPECIFIC PERSONAL JURISDICTION OVER THE USCCB ..........................................................21

     C. THE CASE THAT PLAINTIFF PRIMARILY RELIES ON DOES NOT PROVIDE A BASIS FOR ASSERTING PERSONAL JURISDICTION OVER THE USCCB ...............................27

     D. THE *SOUTHERN MACHINE* TEST WEIGHS IN FAVOR OF THE CONFERENCE AND AGAINST THE PLAINTIFF .......................30

     E. THERE WAS NO WAIVER HERE...................................32

II.    PLAINTIFF'S CHOICE OF VENUE WAS IMPROPER......................35

A. AN ALLEGED SINGLE DECISION BY A NON-PARTY IS NEITHER "SUBSTANTIAL" NOR A "PART OF THE EVENTS OR OMISSIONS GIVING RISE TO THE CLAIM." ..............................36

B. THE ONLY VENUE PROPER FOR CO-DEFENDANTS IS THE WESTERN DISTRICT ......................................................................36

C. A TRANSFER FOR CONVENIENCE WOULD ALSO HAVE BEEN APPROPRIATE......................................................................40

CONCLUSION & REQUEST FOR RELIEF ..........................................................40

CERTIFICATE OF COMPLIANCE......................................................................41

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

*Air Products and Controls, Inc. v. Safetech Inter., Inc*., 503 F.3d 544, 549-50 (6th Cir. 2007) ..................................................................................22, 24

*Berger v. City of Mayfield Heights*, 265 F.3d 399, 402 (6th Cir. 2001).................12

*Burger King Com. v. Rudzewicz*, 471 U.S. 462, 474 (1985) .......................21, 22, 26

*Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) ..................37

*Children's Legal Services, PLLC v. Shor Levin and Derita, PC*, 850 F.Supp.2d 673, 683-84 (6th Cir. 2012) ..............................................................23, 24

*Daimler AG v. Bauman*, 571 U.S. 20, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) ..........................................................................16, 17, 18, 19, 20

*Detroit Tug & Wrecking Co v Gartner*, 75 Mich. 360; 42 N.W. 968 (1889)..........13

*Devaughn v. Inphonic, Inc*., 403 F.Supp.2d 68, 72-74 (D.D.C. 2005)...................37

*Domino's Pizza v. Caribbean Rhino, Inc*., 453 F.Supp.2d 998, 1006 (E.D. Mich, 2006) ................................................................................................35

*Gerber v. Riordan* 649 F.3d 514, 519 (6th Cir. 2011)............................................34

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) ......................................................................18

*Hamilton v. Atlas Turner, Inc*., 197 F.3d 58, 60 (2d Cir. 1999)............................11

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (quoting *International Shoe*, at 319).......................................................................22

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ........................................16, 19, 21, 22, 26

*International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945).......18, 22, 28

iv

*In–Flight Devices Corp. v. Van Dusen Air, Inc*. 466 F.2d 220, 224 (6th Cir.1972) .................................................................................21

*Kendall U.S.A., Inc. v. Central Printing Co*., 666 F. Supp. 1264, 1268 (N.D. Ind. 1987) .................................................................................38

*Kulko v. Superior Court of California*, 436 U.S. 84, 91 (1978) .............................21

*Marrs v Bd of Medicine,* 422 Mich 688, 694; 375 NW2d 321 (1985) ...................12

*McClamrock v. Eli Lilly and Co*., 267 F.Supp.2d 33, 37 (D.D.C. 2003) ...............37

*Monaco v. G. D. Searle & Co*., 506 F.Supp. 695, 696 (N.D. Ill. 1979) ................38

*Overland, Inc. v. Taylor*, 79 F.Supp.2d 809, 811 (E.D. Mich. 2000).....................35

*Saint-Gobain Calmar, Inc. v. National Products Corp*., 230 F.Supp.2d 655659, (E.D. Pa. 2002)................................................................37

*Savidge v Ottawa County Circuit Judge,* 105 Mich. 257, 259; 63 N.W. 395 (1895) .................................................................................13

*Seifert v Buhl Optical Co,* 276 Mich. 692, 699; 268 N.W. 784 (1936)..................13

*Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2012) ........................4, 27, 28, 29, 30

*Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) .........................................................22

*Sifers v. Horen*, 385 Mich. 195 (1971) ..................................................................21

*Smith v. Khouri,* 481 Mich. 519, 526; 751 N.W.2d 472, 477 (2008) .....................13

*Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374 (1968)...............14, 30, 31

*Spalding v Spalding,* 355 Mich. 382, 383-385; 94 N.W.2d 810 (1959).................12

*United States v. Ziegler Bolt & Parts Co*., 111 F.3d 878, 882 (Fed. Cir. 1997) .....11

*Wendel v Swanberg*, 384 Mich. 468, 475-76; 185 N.W.2d 348 (1971) .................12

*Wikol ex rel. Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004) ........................................................................................................12

*Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981) .......................................................................21

**Statutes**

28 U.S.C. § 1391 .................................................................................................35, 36

**Rules**

Fed. R. Civ. P. 45 ....................................................................................................38

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff's Statement Regarding Oral Argument is both incomplete and in some respects incorrect.  The USCCB[1] is not a hospital or health care organization, is not actually accused in this lawsuit of authoring or enacting hospital policies, and did not do so.  The Conference is a Catholic non-profit corporation that has done nothing more than express its Catholic values and beliefs in Washington, D.C., where it resides.  Plaintiff's action seeks to limit the USCCB's constitutionally protected rights to religious liberty and free speech, asking this Court to silence it and prevent it from expressing its deeply held, sincere religious beliefs.

More importantly, the substantive issues Plaintiff apparently wishes to litigate here are not properly before this Court, because the District Court ruled that it did not have personal jurisdiction over the USCCB.  With regard to the appellate posture of the portion of the case against the USCCB, then, this Court's task is far more circumscribed than Plaintiff claims and is confined to reviewing the personal jurisdiction issue only.  Because this Court's review of the personal jurisdiction issue is extremely narrow and involves the application of well-settled legal principles, the USCCB does not believe that oral argument is needed to dispose of the appeal.  The USCCB, however, desires to participate in oral argument if this

---

[1] The abbreviations "USCCB" or "Conference" refer to the United States Conference of Catholic Bishops.

1

Court entertains oral argument.

## JURISDICTIONAL STATEMENT

Plaintiff's Jurisdictional Statement is incomplete. After this case was filed in the United States District Court for the Eastern District of Michigan, the USCCB entered a special appearance, appearing for the purpose of contesting personal jurisdiction. Notice of Special Appearance, February 3, 2014, R. 14, Page ID #65. The USCCB filed a Motion to Dismiss based on lack of personal jurisdiction, and co-Defendants filed a Motion for Change of Venue. The USCCB concurred in co-Defendants' Motion to Change Venue. It did not seek that relief on its own behalf.

After hearing oral argument on the pending motions, the District Court for the Eastern District of Michigan granted the Individual Defendants' Motion for Change of Venue only. Because no ruling on the USCCB's Motion to Dismiss was issued, that motion remained pending at the time of transfer. At the request of the U.S. District Court for the Western District of Michigan, the motion was re-filed in the PACER system for the purpose of placing it at issue in the court to which it had been transferred. At or about the same time, co-Defendants filed their own Motion to Dismiss. After evaluating both motions, the District Court cancelled the second round of oral arguments and issued an extensive written opinion. The ruling stated, among other things, that the District Court did not have personal jurisdiction over the USCCB, and so the Conference was dismissed from

the case.  The present appeal was filed the same day the ruling was issued.

## COUNTER-STATEMENT OF THE CASE

Plaintiff's Statement of the Case includes errors and omissions that require correction.  First, though not acknowledged by Plaintiff, the factual assertions set forth therein are allegations only.  Because the District Court did not have personal jurisdiction over the USCCB, and the allegations against co-Defendants were dismissed prior to filing an Answer, none of the facts have been adjudicated.

Second, Plaintiff makes incorrect and misleading statements concerning the procedural history of the case.  For example, the USCCB did not move to dismiss for improper venue.  Plaintiff incorrectly refers to the USCCB's Concurrence in and Response to Co-Defendant's motion, as a "motion."  It was not.  Plaintiff's insistence on referring to the Concurrence by a fictional title is obviously improper, without basis, and intended to be misleading.  The District Court did not rule that the USCCB had filed any motion to dismiss on the basis of venue.

Third, it should be noted that Plaintiff does not cite a single fact in support of its argument that the USCCB is "at home" in Michigan.  Plaintiff fails to cite any facts showing that the USCCB has any of the traditional ties normally associated with a finding of specific personal jurisdiction.[2]  Instead, Plaintiff cites a

---

[2] Plaintiff does not address and appears to have abandoned the general personal jurisdiction argument, making no attempt on appeal to articulate any position at all concerning general personal jurisdiction.

few transient contacts and then attempts to crudely re-frame the issue based on a single case that is inapplicable to the facts here. Plaintiff appears to have picked the single case [*Schneider, infra*] that, although inapposite, comes as close as Plaintiff can muster to any issue pertinent to this Court's analysis. Plaintiff over-reads and stretches this case to provide a shaky legal foundation upon which she proceeds to build her argument. All the while, Plaintiff essentially ignores decades of U.S. Supreme Court and Sixth Circuit precedent, making no effort whatsoever to explain how the Conference could conceivably be considered "at home" in Michigan. Plaintiff further fails to acknowledge that her sole claim connecting the Conference to her cause of action is a hearsay statement allegedly made to an anonymous individual concerning a purported decision made by a non-party. Plaintiff fails to explain how such a tenuous connection could possibly be consistent with well-settled precedents, all of which that require Plaintiff to show that the Conference is "at home" in Michigan or, at the very least, has sufficient ties to Michigan to meet the Due Process Clause's "fair play and substantial justice" standard.

The District Court correctly ruled that it had no personal jurisdiction over the USCCB. This holding was based on the following facts, which Plaintiff does not dispute in any meaningful way:

- The USCCB is a non-profit civil corporation organized under the laws of the

District of Columbia. Affidavit of Linda Hunt, ¶ 16, R. 21, Page ID #164.

- The USCCB is the successor corporation to the United States Catholic Conference [hereinafter "USCC"] and was created and established by the Roman Catholic Bishops of the United States to act as their national public policy agency. *Id*. ¶ 3, R. 21, Page ID #163.

- The USCC did not exercise any authority over individual bishops or dioceses. *Id*. ¶ 4, R. 21, Page ID #163.

- The USCC's headquarters and principal place of business were in Washington, D.C. *Id*. ¶ 5, R. 21, Page ID #163.

- It had no office and maintained no facilities, employees or agents in the State of Michigan. *Id*. ¶ 6, R. 21, Page ID #163.

- In June 2001, the USCC's name was changed to the USCCB. *Id*. ¶ 7, R. 21, Page ID #163.

- The USCC's predecessor was The National Conference of Catholic Bishops [hereinafter "NCCB"], an unincorporated ecclesiastical association of all Roman Catholic Bishops in the United States and its territories. *Id*. ¶ 8, R. 21, Page ID #163.

- Its offices were in Washington, D.C. and it had no offices and maintained no facilities, employees or agents in the State of Michigan. *Id* ¶ 9, R. 21, Page ID #163.

- It existed for the purpose of fostering the collegial concerns of the Bishops for the Church and society. *Id*. ¶ 10, R. 21, Page ID #163-64.

- The NCCB was exclusively an episcopal assembly of the Roman Catholic Church hierarchy, with no authority over individual Bishops or Dioceses. *Id*. ¶ 11, R. 21, Page ID #164.

- The NCCB's functions and purposes have now been folded into the USCCB. *Id*. ¶ 12, R. 21, Page ID #164.

- Today, the USCCB carries on its episcopal functions and religious goals. *Id*. ¶ 13, R. 21, Page ID #164.

- Under the Church's Code of Canon Law, the task of the USCCB is circumscribed. The USCCB is a non-profit, charitable organization of Bishops, Archbishops and Cardinals; it plays the unique role of advocating and promoting the pastoral teachings of the Bishops in such diverse areas as liturgy, doctrine, education, family and life, health care, social welfare, immigration, civil rights, criminal justice and the economy. *Id*. ¶ 16, R. 21, Page ID #164.

- The USCCB acts as a service or professional organization, whose members are Bishops, providing assistance to the Bishops in their pastoral work. *Id*. ¶ 17, R. 21, Page ID #164.

- The USCCB provides support and assistance to Diocesan and other service organizations throughout the United States through its offices in Washington,

D.C. and makes occasional assistance visits to dioceses across the country at the request of those dioceses. *Id.* ¶ 18, R. 21, Page ID #164.

- In addition to these services, the USCCB maintains a publishing arm that primarily conducts its activities in the District of Columbia. If a person places an order, the publishing arm effects its sales in Maryland and then distributes publications from Maryland by mail to individuals primarily in the United States, including Michigan, and elsewhere. *Id.* ¶ 19, R. 21, Page ID #164.

- All Cardinals, Archbishops and Bishops of the Roman Catholic Church in the United States belong, *ex officio,* to the USCCB. *Id.* ¶ 20, R. 21, Page ID #165.

- While certain Archbishops and Bishops may be elected as officers of the USCCB, or have other official responsibilities in regard to it, unless a Bishop is acting in such a capacity for the USCCB, his decisions and actions are independent from the USCCB and are not the actions of the USCCB. *Id.* ¶ 21, R. 21, Page ID #165.

- While a Diocesan Bishop may have official responsibilities in the USCCB, it is never the case that in fulfilling his responsibilities as a USCCB official that his decisions relate in any way to the administration of his diocese. *Id.* ¶ 22, R. 21, Page ID #165.

- A Bishop's actions or inactions in the conduct and administration of his own diocese, or as related to the conduct of parishes that are part of that Diocese, are

his alone, and are not the result of any actions by the USCCB. *Id.* ¶ 23, R. 21, Page ID #165.

- But for the sporadic occasions on which a Bishop may be acting in pursuance of his official responsibilities in the USCCB, his actions and decisions are not binding on the USCCB and are not the actions of the USCCB. *Id.* ¶ 24, R. 21, Page ID #165.

- The USCCB does not direct, oversee or supervise Bishops' activities on matters concerning the administration of their Dioceses, or of the parishes that are part of the Diocese, in Michigan or elsewhere. *Id.* ¶ 25, R. 21, Page ID #165.

- As a result of the ecclesial structure and polity of the Roman Catholic Church, which has its basis in the Code of Canon Law, any actions taken or decisions made by any of the Bishops or Dioceses in Michigan are and were made independently of the USCCB, as well as the USCC and NCCB. *Id.* ¶ 26, R. 21, Page ID #165.

- Hence, there is no Parish or Diocese in Michigan that was at any time relevant to this case subject to the actual or potential control of the USCCB. *Id.* ¶ 27, R. 21, Page ID #165.

- The USCCB itself has had no dealings of any sort with the Plaintiff or the unnamed physicians who are accused of malpractice in this matter. *Id.* ¶ 28, R. 21, Page ID #165-66.

- Neither the USCCB nor its predecessor entities are registered to do business in Michigan and do not maintain an agent for service of process in Michigan. *Id*. at ¶ 30, R. 21, Page ID #166.

- The USCCB has not applied for, or obtained, permission to conduct business in Michigan. *Id*. ¶ 31, R. 21, Page ID #166.

- Neither the USCCB nor its predecessors maintains any offices, employees, agents, bank accounts, mailboxes, or telephone listings in Michigan at any relevant time. *Id*. ¶ 32, R. 21, Page ID #166.

- Additionally, none of these organizations have maintained any interest in real or personal property in Michigan at any relevant time. *Id*. ¶ 33, R. 21, Page ID #166.

- The USCCB authored a publication, "Ethical and Religious Directives for Catholic Health Care Services," Fifth Edition, which was issued in its current form in November 2009. Its purpose, as set forth in its Preamble, is "twofold: first, to reaffirm the ethical standards of behavior in health care that flow from the Church's teaching about the dignity of the human person; second, to provide authoritative guidance on certain moral issues that face Catholic health care today." Exhibit A to Affidavit of Linda Hunt, R. 21, Page ID #172-73.

- These directives "express the Church's moral teaching." *Id*., R. 21, Page ID #173. They "do not cover in detail all of the complex issues that confront

Catholic health care today." *Id*.  Contrary to Plaintiff's selective assertions, they do not preclude anyone from being given appropriate medical care within the applicable standard of care, and they specifically require "free and informed consent . . . for medical treatments and procedures." *Id*., R. 21, Page ID #180.

- "Free and informed consent requires that the person . . . receive all reasonable information about the essential nature of the proposed treatment and its benefits; its risks, side-effects, consequences, and costs; and any reasonable and morally legitimate alternatives, including no treatment at all." *Id*.

- Abortions are contrary to the Catholic Church's religious beliefs, and there is no directive that requires or even allows a pregnant mother to be harmed in any way.  To the contrary, "[o]perations, treatments, and medications that have as their direct purpose the cure of a proportionately serious pathological condition of a pregnant woman are permitted when they cannot be safely postponed until the unborn child is viable, even if they will result in the death of the unborn child." *Id*., R. 21, Page ID #183

- The directives are a statement of the Conference's, and ultimately its member Bishops', moral and religious positions as they relate to health care issues. Affidavit of Linda Hunt, ¶ 41, R. 21, Page ID #167.

- They were not written in the State of Michigan, but instead in Washington, D.C. *Id*. ¶ 42, R. 21, Page ID #167.

10

- The USCCB has no mechanism to enforce them. *Id*. ¶ 43, R. 21, Page ID #167.

- The USCCB does not credential doctors, hospitals, or other health care providers. *Id*. ¶ 44, R. 21, Page ID #167.

Indeed, based on these facts and the analysis and argument below, whether concerning its contacts or its directives, there is simply no relationship of the USCCB to the State of Michigan which could justify the exercise of personal jurisdiction over the USCCB. Plaintiff's argument fails to acknowledge, rebut, or meaningfully dispute any of these facts.

## COUNTER-STATEMENT OF STANDARDS OF REVIEW

Plaintiff's Statement of the Standards of Review is incomplete in that it fails to address the standard of review applicable to Plaintiff's waiver argument. Waiver is subject to an abuse of discretion standard. "A determination as to "waiver [of personal jurisdiction is] within the discretion of the trial court, consistent with its broad duties in managing the conduct of cases pending before it." *United States v. Ziegler Bolt & Parts Co*., 111 F.3d 878, 882 (Fed. Cir. 1997). Thus,

> . . . [o]n appeal, this court defers to the judgment of the trial court on such matters closely associated with the standard functions of the adjudicative process, so long as that judgment is not an abuse of the trial court's discretion. Accordingly, [we review] the trial court's decision on the waiver issue for an abuse of discretion.

*Id*. (internal citations omitted); *see also Hamilton v. Atlas Turner, Inc*., 197 F.3d

58, 60 (2d Cir. 1999). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 402 (6th Cir. 2001) (citation omitted). An abuse of discretion occurs where the district court "relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard." *Wikol ex rel. Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004).

Michigan's interpretation of the abuse of discretion standard comports with the strong policy of deference to trial courts set forth in the federal cases. In *Wendel v Swanberg*, 384 Mich. 468, 475-76; 185 N.W.2d 348 (1971), the Michigan Supreme Court stated:

> Our prior decisions sharply limit appellate review of a trial court's valid exercise of discretion:
>
> 'The term discretion itself involves the idea of choice, of an exercise of will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' *Spalding v Spalding,* 355 Mich 382, 383-385; 94 NW2d 810 (1959).

*See also Marrs v Bd of Medicine,* 422 Mich. 688, 694; 375 N.W.2d 321 (1985).

A trial court's exercise of discretion will be overturned only in the most exceptional circumstances. An abuse of discretion must be so plain that, on

construction of the facts, an unprejudiced person can say that there is no justification nor excuse for the ruling made. *Detroit Tug & Wrecking Co v Gartner*, 75 Mich. 360; 42 N.W. 968 (1889). *See also Seifert v Buhl Optical Co,* 276 Mich. 692, 699; 268 N.W. 784 (1936). An abuse of its discretion does not arise out of the mere fact that the reviewing court would have exercised its discretion differently, even under like circumstances, than did the trial court. *Savidge v Ottawa County Circuit Judge,* 105 Mich. 257, 259; 63 N.W. 395 (1895). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v. Khouri,* 481 Mich. 519, 526; 751 N.W.2d 472, 477 (2008).

## SUMMARY OF ARGUMENT

The USCCB does not have any of the traditional ties or connections to the State of Michigan that would permit a District Court there to assert personal jurisdiction over it. None of Plaintiff's facts or arguments support the proposition that the USCCB is "at home" in Michigan. Plaintiff's sole claim connecting the Conference to her cause of action is a hearsay statement allegedly made to an anonymous individual concerning a purported decision made by a non-party. There is no case that has ever held—on the basis of so tenuous a connection—that assertion of personal jurisdiction would be consistent with the Due Process protections of the 14th Amendment to the United States Constitution. The facts as

pled, therefore, do not even approach what would be needed to satisfy the very first prong of the *Southern Machine*[3] test.  There is simply no purposeful availment to be found anywhere in the facts of this case.

Plaintiff's waiver argument borders on the frivolous.  Plaintiff well knows that the USCCB entered a Special Appearance specifically putting the other parties and the District Court on notice that it did not intend to waive the threshold defense of personal jurisdiction, and that nothing it did in the course of contesting jurisdiction and concurring in the other Defendants' motion regarding venue should have been construed as a waiver.  Nonetheless, Plaintiff actively misleads this Court by stating that the USCCB's Concurrence in the Individual Defendant's Motion to Change Venue was in some way a motion itself that somehow constituted a waiver.  The position is absurd.  Moreover, the District Court's rejection of the waiver argument is reviewed for an abuse of discretion.  Plaintiff is either unaware of or intentionally fails to acknowledge this deferential standard of review.  Plaintiff fails to provide any basis whatsoever or even argue that the District Court abused its discretion when it ruled there was no waiver.  Thus, this Court should consider the argument abandoned.

---

[3] *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374 (1968)

# ARGUMENT

### I.    There is no basis for the U.S. District Court in Michigan to assert personal jurisdiction over the USCCB.

The District Court does not have personal jurisdiction over the USCCB. With regard to general personal jurisdiction, Plaintiff has failed to argue or preserve this issue by abandoning it at the trial court level. Even if Plaintiff had attempted to advance the argument, there would be no basis to support a finding of general personal jurisdiction.

With regard to specific personal jurisdiction, there is similarly no basis for its assertion. Although Plaintiff cites and quotes from the traditional three-prong test for specific personal jurisdiction, she thereafter ignores the specific requirements of the test. She instead focuses mostly on a single, inapposite case that involves a fraudulent Ponzi scheme and an attempt to knowingly engage in fraudulent conduct in the forum state by physically sending fraudulent communications into the forum state. That case bears no relationship to the facts and circumstances of the present case. Plaintiff further attempts to use a flawed analogy to injecting products into the stream of commerce. These positions were meticulously analyzed and flatly rejected by the District Court.

### A.    There is no general personal jurisdiction over the USCCB.

General jurisdiction is based on continuous and systematic contacts with the forum state. When general jurisdiction is present, the court may exercise personal

jurisdiction over the defendant even when the action is unrelated to the defendant's contacts with the state.

For 25 years, *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), was the seminal case controlling the analysis of general personal jurisdiction. In *Helicopteros*, survivors and representatives of four United States citizens who died in a helicopter crash brought an action in a Texas District Court against Helicopteros Nacionales, the Colombian corporation that owned the helicopter. During a three-year period Helicopteros purchased helicopters, spare parts and accessories for more than $4 million from a Texas company. Helicopteros sent pilots to Texas both for training and to fly the helicopters to South America. It also sent management and maintenance personnel to Texas for training. The CEO of Helicopteros traveled to Texas for a contract negotiation session. The United States Supreme Court held that despite all of those contacts with Texas, the contacts did not constitute "continuous and systematic contacts." *Id*. at 416.

The passage of time has focused and narrowed the analysis controlling a court's exercise of general jurisdiction, raising the bar considerably for a plaintiff seeking to establish jurisdiction over a non-resident entity, such as here. In a case decided recently, *Daimler AG v. Bauman*, 571 U.S. 20, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), the United States Supreme Court analyzed whether the Due Process

16

Clause of the Fourteenth Amendment permitted the exercise of general personal jurisdiction over a non-resident, foreign corporation. In *Daimler*, the plaintiffs filed suit in the U.S. District Court for the Northern District of California. *Id*. at 751. The plaintiffs alleged that Daimler had collaborated with government security forces in Argentina for the purposes of kidnapping, detaining, torturing and killing plaintiffs and their relatives during a military dictatorship. *Id*. The numerous claims included Alien Tort Statute claims, Torture Victim Protection Act claims, wrongful death claims, and intentional infliction of emotional distress claims under both the laws of California and Argentina. *Id*.

In its analysis, the Supreme Court noted that Daimler's subsidiary owned a limited liability company ["LLC"] that had multiple California-based facilities. It noted the LLC had a regional office in Costa Mesa, CA, a Vehicle Preparation Center in Carson, CA, and a Classic Center in Irvine, CA. *Id*. at 752. The Supreme Court noted that the LLC was the largest supplier of luxury vehicles to the California market, and that its California sales accounted for 2.4% of Daimler's worldwide sales. *Id*. An agreement between the LLC and Daimler expressly disclaimed any agency, employee, or joint venture relationship. *Id*.

The Supreme Court's *Daimler* opinion provides an extensive history of general personal jurisdiction and its evolution over time. The Court acknowledged that specific jurisdiction "has become the centerpiece of modern jurisdiction

theory, while general jurisdiction [has played] a reduced role." *Id*. at 755 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)). The Court further acknowledged that post-*International Shoe* opinions on general jurisdiction were few. *Id*. Indeed, after a lengthy recitation of general jurisdictional opinions, the Court admitted that "general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Id*. at 758. Despite the fact that the LLC was "at home" in California, the Supreme Court held that Daimler's "slim contacts with the State hardly render[ed] it at home there." *Id*. at 760. Ultimately, the Court cited and followed key language from *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945), which it said spoke "of 'instances in which the continuous corporate operations within a state [were] so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings entirely distinct from those activities*.'" *Daimler,* at 761 (citing *International Shoe* at 318, 66 S.Ct. 154 (emphasis added in *Daimler*).).

*Daimler* represents a reaffirmation and extension of the principles limiting the exercise of personal jurisdiction in favor of the Conference's position in the present case. In *Daimler*, general jurisdiction was nowhere to be found, despite the fact that Daimler's U.S. subsidiary:

- Was the exclusive supplier of Daimler's products to car dealerships in the

forum state (*id*. at 752);

- Had three facilities of its own in the forum state (*id*.);

- Had a regional office in the forum state (*id*.);

- Was the largest supplier of luxury vehicles to the forum state (*id*.)

- Received a significant amount of its revenue from sales in the state (*id*.).

The facts of both *Helicopteros* and *Daimler* starkly contrast with the facts of this case. Indeed, if general jurisdiction was not present in either *Daimler* or *Helicopteros*, it is difficult to fathom how Plaintiff could possibly argue that it exists here. In this case, the Conference has established by declaration that it is not a resident of Michigan, that its corporate offices are outside of Michigan, that it does not conduct business in Michigan, has no offices here, has no agents or representatives in Michigan conducting business, and that it does not own property here. Affidavit of Linda Hunt, ¶¶ 5-6, R. 21, Page ID #163, #166. It has not consented to jurisdiction here. Notice of Special Appearance, February 3, 2014, R. 14, Page ID #65. And, unlike in *Daimler*, neither the diocese nor MHP nor CHM are "subsidiaries" of the USCCB in the first place. Under these circumstances, the Conference does not have either the type or the nature of contacts with Michigan that would be necessary to confer general jurisdiction on this court.

The contacts in both *Daimler* and *Helicopteros* were substantially greater than here, yet in neither case were they sufficient to support the assertion of

personal jurisdiction.  In fact, unlike in *Daimler*, the Conference has no substantial, continuous corporate operations in Michigan at all.  Put simply, there is no sound basis on which to impose general personal jurisdiction over the USCCB.  There is no reasonable argument to be made in support of Plaintiff's supposition that the Conference could possibly be "at home" in Michigan.  Thus, general personal jurisdiction is not present here.

Plaintiff appears to agree that there is no general personal jurisdiction, because Plaintiff's Brief on Appeal seems to abandon any meaningful attempt to show general personal jurisdiction.  As at the trial court level, Plaintiff cited to a few incidental and totally unrelated contacts the Conference may have had with Michigan (i.e., a $10,000 charitable donation to the Gaylord Diocese, and participation in a diocese's training session in Kalamazoo titled "Building Intercultural Competence for Ministers Training.").  None of the activities identified by Plaintiff, singly or in the aggregate, could conceivably meet any established legal test for general personal jurisdiction.  Even more significantly, Plaintiff entirely ignored the narrowed view of general personal jurisdiction set forth in *Daimler*, which properly limited personal jurisdiction over organizations to states where they would be viewed as being "at home."  *Daimler*, 134 S.Ct. at 762. *Daimler* was a unanimous decision.  The USCCB is in no sense "at home" in Michigan.  There is no general personal jurisdiction to be found here.

**B.**    __There is no specific personal jurisdiction over the USCCB__

Where subject matter jurisdiction is allegedly based on diversity, as here, the District Court looks to the law of the forum state to decide whether it may exercise personal jurisdiction over a non-resident defendant. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *In–Flight Devices Corp. v. Van Dusen Air, Inc*. 466 F.2d 220, 224 (6th Cir.1972).   Application of state law in this context is limited by constitutional considerations of due process. *Welsh*, 631 F.2d at 439.  Even when the defendant is within the reach of the state's long-arm statute,[4] the exercise of personal jurisdiction over it is permissible only if consistent with the requirements of constitutional due process. *Kulko v. Superior Court of California*, 436 U.S. 84, 91 (1978).  The determination whether the exercise of personal jurisdiction comports with due process has two parts: (1) whether the nonresident defendant has purposefully established "minimum contacts" with the forum state; and, if so, (2) whether the exercise of jurisdiction comports with traditional notions of "fair play and substantial justice." *Burger King Com. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).  These requirements ensure that potential defendants are provided with "fair warning that a particular activity may subject [them] to the jurisdiction of a

---

[4] Michigan's long-arm statute is interpreted as broadly as possible in a manner consistent with due process. *Sifers v. Horen*, 385 Mich. 195 (1971).

foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring.)

In contrast to general jurisdiction, specific jurisdiction is present only when the action is directly related to the defendant's contacts with the forum state. *Id.* To establish that a nonresident defendant has minimum contacts with Michigan, "'[i]t is essential that there be some act by which the defendant purposefully avails itself of conducting activities within the forum state, thus invoking the benefit and protection of its laws.'" *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (quoting *International Shoe*, at 319); *Burger King*, 471 U.S. at 472. The "purposeful availment" requirement assures that nonresident defendants, like the USCCB, will not be haled into court in a distant forum state based solely upon random, fortuitous, or attenuated contacts or upon the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475; *Helicopteros*, 466 U.S. at 417.

A court may exercise "specific" personal jurisdiction over a non-resident defendant only where the complaint relates to an entity's activities in, or directed toward, the forum state. *Air Products and Controls, Inc. v. Safetech Inter., Inc.*, 503 F.3d 544, 549-50 (6th Cir. 2007) (holding that specific jurisdiction existed because the defendant had a multi-year relationship with the in-state entity that involved purchasing hundreds of thousands of goods, the defendant applied for credit in Michigan, and purchase orders were sent to Michigan). *See also,*

*Children's Legal Services, PLLC v. Shor Levin and Derita, PC*, 850 F.Supp.2d 673, 683-84 (6th Cir. 2012) (holding that specific jurisdiction was present when a law firm in Pennsylvania had a prior contractual relationship with the Michigan firm, it paid substantial fees to the Michigan firm, it was aware that its infringing activities affected the Michigan firm, and a Michigan bankruptcy court ordered the client to transfer funds to the Michigan firm).

Here, in its Complaint, Plaintiff does not point to a specific act of the USCCB in Michigan, nor to any act directed toward Michigan. Indeed, Plaintiff also does not and cannot demonstrate any relationship the Conference has with Michigan or with anyone within Michigan that could conceivably support a claim that this court has specific jurisdiction. Instead, Plaintiff points to the actions of non-parties while ignoring the fact that the Conference has done nothing whatsoever to purposely avail itself of the benefit and protection of Michigan's laws.

The highly unusual cause of action pled against the Conference in Plaintiff's Complaint appears to be based on the Conference's alleged "negligent" exercise of its constitutionally protected religious freedom, which it indisputably exercised in Washington, D.C. Given the way Plaintiff has framed this issue and pled the case, it would appear that Plaintiff is alleging that because she believes a doctor in Michigan interpreted the Conference's published theological principles in a

manner inconsistent with his or her legal duty as a licensed physician acting in Michigan, it is therefore in some way fair to hale the Conference into court here in Michigan.  This theory of jurisdiction is truly novel, unprecedented, and legally flawed.  Indeed, if it were correct, it would mean that any plaintiff could utterly trump the Due Process Clause's prohibitions and cause any court in the United States to exercise personal jurisdiction over the USCCB anywhere at all by the simple expedient of claiming that some person in a forum state had taken some action there, based on a statement of religious principle or belief issued by the USCCB in Washington, D.C.  The Due Process Clause cannot so easily be rendered a nullity.

Despite an exhaustive search of 6th Circuit opinions addressing specific personal jurisdiction, undersigned counsel was unable to find even one that held specific jurisdiction was present based on the extraordinarily and unusually tenuous connection that Plaintiff depends on here.  Every opinion on this issue requires at the very least some substantial contact with the forum state that arises out of the relationship or transaction between the defendant and the plaintiff, upon which the action is based.  *See, e.g. Air Products and Controls, Inc.* and *Children's Legal Services, PLLC, supra.*

Here, the required connection is not pled because it simply does not exist.  As explained above, the ERDs express the Church's moral and religious principles

as applied in the health care context. On their face, nothing in the directives has any jurisdictional connection to Michigan *at all*. The Conference, residing in Washington, D.C., chose to exercise its constitutionally protected religious freedom by preparing and issuing the directives in Washington, D.C. It is not even claimed to have done any supposedly wrongful act in Michigan, or to have done any action anywhere directed specifically toward Michigan.

The purpose of the directives is to inform Catholics who provide health care about the Church's teachings regarding the numerous ethical and moral issues they may confront and provide them a moral and religious framework in which to handle these sometimes difficult and demanding situations. They do not address any legal standard of care, and they do not address the standard of care applicable to physicians in the State of Michigan. They do not advocate deviating from any standard of care, in Michigan or elsewhere, and adhering to them will not result in any deviation from any applicable standard of care. They do not advocate harming a patient, in Michigan or elsewhere, and abiding by them will not result in the harming of a patient.

The only connection alleged between the directives and Michigan is that the Individual co-Defendants, allegedly acting for a non-party, Catholic Health Ministries (CHM), are purported to have made a decision in Michigan to adhere to the directives. Although this decision, if it did indeed occur, could possibly have a

bearing on whether the court has specific jurisdiction over the Individual Defendants and/or CHM, it has nothing at all to do with the Conference, which has no legally cognizable relationship to CHM or to any of the Individual Defendants.

Whether a physician, an administrator, or anyone else reviewed the directives and interpreted them in a manner inconsistent with their alleged legal responsibilities to a patient under Michigan law has nothing at all to do with the USCCB, and it most certainly has nothing to do with whether the court may fairly exercise jurisdiction over the Conference. Thus, the facts pled do not support assertion of jurisdiction.

The alleged decision to adhere to the directives, as well as any alleged substandard care provided by a physician or hospital based on the non-party's interpretation(s) of the directives, are exactly the kind of "unilateral activity of another party or a third person" that the United States Supreme Court has held insufficient to confer personal jurisdiction. *Burger King*, 471 U.S. at 475; *Helicopteros*, 466 U.S. at 417. This is precisely why the "purposeful availment" requirement exists, to assure that nonresident defendants, like USCCB, will not be haled into court in a far-off jurisdiction as Plaintiff seeks to do here, on the basis of actions allegedly taken by other unrelated persons or entities. The Conference has not purposely availed itself of the protection of Michigan law and has done no act in Michigan or directed toward Michigan that relates to the events complained of

here.   The Conference has insufficient ties to Michigan and is not sufficiently connected to Michigan for a court to assert personal jurisdiction over it anywhere in Michigan.    Plaintiff's allegations, even if assumed to be true, form an insufficient basis upon which to exercise personal jurisdiction over the Conference.

### C.    The case that Plaintiff primarily relies on does not provide a basis for asserting personal jurisdiction over the USCCB.

The majority of Plaintiff's argument in favor of the exercise of personal jurisdiction is based on the case of *Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2012).   Unlike the present case, *Schneider* involved allegations of an intentional, fraudulent tort involving a Ponzi scheme aimed at Michigan residents rather than a claim of ordinary negligence.   *Id*. at 696.   An attorney, at the behest of the operator of the Ponzi scheme, wrote letters that were misleading with the apparent knowledge that the letters would be sent into the forum jurisdiction and used to further the scheme.   *Id*.   On this basis alone, the case is materially different. *Schneider* involves intentional tortious conduct as well as the physical sending of fraudulent communications into the forum jurisdiction.

In *Schneider*, the Sixth Circuit analyzed the operative facts and applied them to the law.   A key concept cited in the ruling was due process and the requirement that whatever minimum contacts existed with the forum state, they must give rise to the reasonable anticipation of "being haled into court there."   *Id*. At 701.   These contacts were important to the analysis precisely because they satisfy the

27

*International Shoe* test and ensure that there is no offense to the "traditional notions of fair play and substantial justice." *Id*.

In *Schneider*, there was actual evidence that the attorney who wrote the letters crafted them to sound as if he was acting in the best interests of the investors even though his deposition testimony suggested that he was not. *Id*. at 702. The Sixth Circuit reached the conclusion that if the attorney had sent the letters into the forum jurisdiction, there would be no question at all about whether specific personal jurisdiction existed. *Id*. The mere fact that he did not send them personally was immaterial to the due process analysis, because he drafted them for the purpose of having someone else send them into the forum jurisdiction to pursue the fraud scheme there. *Id*. This Court further found that the attorney was "intimately" involved in the scheme, and the mere fact that the client, rather than the lawyer, physically mailed the letters did not serve to make the attorney's actions "any less purposefully directed at the recipient investors." *Id*. at 703.

The facts in the present case are entirely different. In this case, nobody, including the USCCB, physically sent anything to Michigan or to any of the anonymous individuals accused of having harmed Plaintiff. Even if this indisputable fact is ignored, the USCCB did not have any kind of legally significant relationship with the alleged multiple intermediaries between the Plaintiff and the USCCB. In fact, there is no legally cognizable relationship

between the Conference and the alleged intermediary actors at all. Plaintiff has not shown or even alleged that the USCCB had any relationship at all to the doctor(s) she claims committed malpractice on her, the employer of the doctor(s) who she claims committed malpractice on her, the managers, administrators or officers of the hospital at which the alleged incident occurred, the governing board of the hospital, or even with MHP. Thus, the facts that this Court is called upon to evaluate present a scenario that is at least five times removed from the closest case Plaintiff could find on this subject. Plaintiff's strained interpretation of *Schneider*, if adopted, would implausibly allow suit against anyone virtually anywhere for merely expressing religious opinions, ideals or church doctrine that someone subsequently agrees with in a remote jurisdiction. Plaintiff is essentially asking this Court to completely rewrite this well-settled rule of law. If Plaintiff's personal jurisdiction argument is accepted, personal jurisdiction would exist virtually whenever it was artfully pled. This is not the law.

Plaintiff's novel interpretation of the case law in this area seeks to impose personal jurisdiction in Michigan over a non-profit corporation with a religious mission that Plaintiff admits is (1) not present in Michigan, (2) is present only in D.C., (3) that acted only in D.C. with regard to the issues presented in this case, and (4) that has none of the traditional ties to Michigan that courts have used to assert personal jurisdiction. Plaintiff's sole argument can be reduced to the

proposition that the USCCB must have known that it was possible that someone in Michigan might read the directives and agree with them, make a particular decision based upon his interpretation of the directives, and that this type of act by a third party, all by itself, is sufficient to confer specific personal jurisdiction. If this argument is accepted, personal jurisdiction would be properly asserted anywhere in the United States against any person or entity expressing religious views, for doing nothing more than expressing them.

Plaintiff's expressed positions turn the appropriate analysis upside down. Instead of looking at what the USCCB does and where it does it, it looks to what other, unrelated people do, and where they do it. It is simply impossible to reconcile Plaintiff's advocated approach with the constitutional principles that have controlled this issue for decades.

### D.    The *Southern Machine* test weighs in favor of the Conference and against the Plaintiff.

*Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374 (1968) is prominently referenced in Plaintiff's brief as supportive of Plaintiff's argument. Like *Schneider*, it is not. In the case, Southern Machine, which was located in Tennessee, entered into a licensing agreement with the defendant, Mohasco, which was located in New York. Mohasco had virtually no physical presence in Tennessee, but it did have the licensing agreement with Southern Machine. The court held that Mohasco had purposely availed itself of the privilege of transacting

business in Tennessee, referring to this issue "as the *sine qua non* for *in personam* jurisdiction."  *Id*. at 381-82.  The lynchpin of the analysis turned on the existence of the licensing agreement between the parties, and its terms, which provided a sufficient basis for the exercise of specific personal jurisdiction.  *Id*. at 385.  Moreover, Mohasco had "retained substantial control over the manufacture and marketing . . . ."  *Id*.  Thus, given the contract, the control over the manufacture and marketing, Tennessee had "a continuing interest" in the continuing relationship between the parties that was sufficient to exercise jurisdiction.  *Id*. at 385-86.

Here, it is not disputed that there was no agreement or contract between the Conference and the physicians accused of malpractice, either written or verbal.  It is not disputed that there was no business transaction involving anyone in Michigan, and the USCCB.  It is not disputed that the Conference exercised no control over the actions of the physicians involved in this case or their employer.  Michigan had and has no continuing interest in any business relationship between the Conference and these doctors or their hospital, because none exists.  Under the *Southern Machine* test, then, there are insufficient facts pled to even approach the threshold issue.  Thus, following *Southern Machine* would mitigate in favor of dismissal for want of jurisdiction.

The Conference is a non-profit that, among its other activities, espouses its religious views from its home in Washington, D.C.  It does not manufacture

products, license products for manufacture elsewhere, or place products in the stream of commerce. Thus, none of the stream of commerce cases Plaintiff seeks to analogize have any applicability to the facts here.

### E.    There was no waiver here.

Plaintiff contorts and misdescribes the procedural posture of this case by frivolously arguing waiver. Plaintiff does this even though she acknowledges that the Conference filed its Special Appearance[5] for three specific purposes: (1) to concur in co-Defendants' Motion to Change Venue, (2) to file the personal jurisdiction motion, and (3) to avoid waiving any other defense. Plaintiff's waiver argument is meritless and fundamentally illogical. If Plaintiff were correct, then to avoid waiving a threshold jurisdictional defense would be, at the same time, to waive that defense.

As an initial matter, whether there was a waiver is reviewed for an abuse of discretion. The abuse of discretion standard is an exceptionally deferential standard. Plaintiff has not stated or otherwise acknowledged the standard of review applicable to a waiver, and Plaintiff has made no attempt to argue that the ruling was an abuse of discretion. For this reason alone, the District Court's ruling that there was no waiver should be affirmed.

Second, the Concurrence filed by the USCCB was not a responsive pleading,

---

[5] Plaintiff has never objected to the Special Appearance.

is not a pleading at all under Rule 7, and was filed in response to co-Defendants' Motion, not in response to the Complaint. Hence, it was not a responsive pleading, nor was it determined to be one, which would be a necessary prerequisite to any waiver argument.

Third, the Concurrence was not a motion, and the Conference manifestly did not file any such motion. The Concurrence merely concurred with co-Defendants' positions regarding venue. It did not assert any substantive defense or request any relief not already raised in co-Defendant's motion. Under co-Defendants' analysis, no venue was proper as to the USCCB, a simple fact mandating dismissal. This was not some new legal theory the Conference was independently arguing to the District Court, but the very legal position argued by co-Defendant, with which the Conference concurred.

Fourth, Plaintiff and all Defendants negotiated a stipulated briefing schedule that did not substantively treat the Concurrence as a motion. In fact, the briefing schedule was suggested by Plaintiff's counsel.[6] Email exchange dated February 11, 2014, R. 30-2, Page ID #698-99. Had Plaintiff truly considered the Concurrence to be a motion, then a separate date for a Reply Brief under the Local Rules would have been included in the Stipulation. It was not. The Stipulation shows that Plaintiff did not consider the Concurrence to be a motion in either form

---

[6] Plaintiff would undoubtedly have argued waiver if the USCCB had allowed the briefing deadlines to expire only to file its own Motion to Change Venue later.

or substance.

Fifth, as this Court held in *Gerber v. Riordan*, "[t]o waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." 649 F.3d 514, 519 (6th Cir. 2011). Here, the USCCB made it clear immediately that it was contesting jurisdiction and seeking dismissal on that basis. The District Court was already required to address co-Defendants' venue motion, so there can be no merit to any argument that the mere filing of the Conference's Concurrence caused the District Court to waste efforts or conclude that the case would be defended on the merits. In fact, Plaintiff does not even argue that the Conference did anything to cause anyone to think it would defend the suit on the merits in Michigan. Moreover, the District Court did not form the opinion that the Conference would defend on the merits, or that any of its efforts were wasted. In fact, it concluded the opposite—that there was no waiver.

This entire argument appears to be an improper, after-the-fact construction[7]

---

[7] Plaintiff's position could not possibly be more at odds with the very definition of the term "waiver." Black's Law Dictionary, Abridged Sixth Edition (1991), defines waiver as the "intentional or voluntary relinquishment of a known right." Nonetheless, Plaintiff argues that after making active and narrowly focused attempts to preserve the jurisdiction arguments, the USCCB waived jurisdiction accidentally, unknowingly and involuntarily.

designed to shift focus away from the substance of the personal jurisdiction question before the Court. Rarely do litigants go to so much trouble to avoid waiving a defense as the USCCB did here. Thus, the argument Plaintiff has chosen to put front and center in her brief has no merit. Any suggestion of waiver should be rejected by this Court.

## II.    *Plaintiff's choice of venue was improper.*

The venue issue was raised in the District Court by co-Defendants. To ensure that this issue is not considered abandoned by it on appeal, the Conference offers its view of venue below while asserting that no venue was proper as to the Conference for the very same reasons that personal jurisdiction was not present. Because venue must be proper for each defendant in cases involving multiple defendants,[8] and venue was improper as to the Conference as well as the co-Defendants, the Conference therefore concurred in co-Defendant's motion.

The legal provision governing appropriate selection of venue is found at 28 U.S.C. sec. 1391:

> (b) Venue in general.--A civil action may be brought in--
> . . .
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; . . . .

---

[8] *See, e.g. Domino's Pizza v. Caribbean Rhino, Inc.*, 453 F.Supp.2d 998, 1006 (E.D. Mich, 2006); *Overland, Inc. v. Taylor*, 79 F.Supp.2d 809, 811 (E.D. Mich. 2000).

Here, Plaintiff's sole claim giving rise to her venue selection in the Eastern District

of Michigan is set forth in Plaintiff's Complaint on Page 4 at paragraph 11:

> The decision that MHP would adhere to Defendant
> USCCB's Directives was made by Catholic Health
> Ministries in the Eastern District of Michigan. Accordingly,
> venue is proper under 28 U.S.C. sec. 1391(b)(2) because a
> substantial part of the events giving rise to the claims
> asserted occurred within the Eastern District of Michigan.

Thus, it cannot be disputed that the sole basis for venue alleged by Plaintiff is an

undated, unsubstantiated allegation about a decision made by a non-party that was,

in an unspecified manner, imposed upon another non-party corporate entity.

### A.    An alleged single decision by a non-party is neither "substantial" nor a "part of the events or omissions giving rise to the claim."

Despite an exhaustive search of venue opinions throughout the United

States, undersigned counsel were unable to locate even a single ruling that deemed

venue proper solely on the basis of a single decision alleged to have been made by

a non-party. As a corollary of this result, the same conclusion would hold true for

a single decision of a non-party (such CHM) that was supposedly imposed on

yet another non-party (such as MHP or some individual medical professional), as is

alleged by Plaintiff in this case. The threshold burden of establishing that venue

was improper in the Eastern District was therefore met.

### B.    The only venue proper for co-Defendants is the Western District.

Although, generally speaking, a plaintiff is to be afforded deference when

choosing a forum, "this factor has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff." *See, e.g. Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955). District courts throughout the country have agreed that particularly when there are minimal connections between the Plaintiff and the chosen forum, as here, the Plaintiff's choice of forum should be given little weight. *See, e.g. Devaughn v. Inphonic, Inc.*, 403 F.Supp.2d 68, 72-74 (D.D.C. 2005) (substantially less deference to choice of forum is warranted when the plaintiff is not a resident of the forum and the claims lack substantial connections to the forum); *McClamrock v. Eli Lilly and Co.*, 267 F.Supp.2d 33, 37 (D.D.C. 2003) (deference to plaintiff's choice is greatly diminished when activities have little, if any, connection to chosen forum); *Saint-Gobain Calmar, Inc. v. National Products Corp.*, 230 F.Supp.2d 655659, (E.D. Pa. 2002) (less weight is given to plaintiff's choice of forum when it is neither his home nor the location of the occurrence upon which the case is based).

The same is true when selecting a venue for negligence or personal injury cases such as this one. Numerous district courts throughout the country have consistently held that transfers of venue in negligence cases are appropriate, particularly when witnesses germane to the case are present in the district to be transferred to and outside the subpoena power of the forum chosen by Plaintiff, as

would have been the case in the Western District.[9] *See, e.g. Monaco v. G. D. Searle & Co.*, 506 F.Supp. 695, 696 (N.D. Ill. 1979) (transfer in a personal injury case was proper to a venue where plaintiffs resided, where treating physicians resided, and where known witnesses were within subpoena power of that federal court but beyond subpoena power of court asked to transfer); *Kendall U.S.A., Inc. v. Central Printing Co.*, 666 F. Supp. 1264, 1268 (N.D. Ind. 1987) (transfer in a negligence case was appropriate when third-party defendants were located in transferee district, plaintiff no longer resided in chosen forum, and transfer would allow for live testimony of important nonparty witnesses at trial by making compulsory process available).

Finally, as previously detailed and summarized in the arguments above concerning personal jurisdiction, the Affidavit of Linda Hunt, Associate General Secretary of the United States Conference of Catholic Bishops, provides a number of undisputed facts that support co-Defendants' request for a change in venue. Multiple assertions in the Affidavit apply to the venue analysis and show that the Eastern District was not a proper venue:

---

[9] Based on Plaintiff's allegations and choice of venue, it would appear that virtually every fact witness in this case would have been outside of the regular subpoena power of the original court in the Eastern District of Michigan, since none of the parties reside within 100 miles of the courthouse in Detroit, and the physicians and hospital administrators implicitly accused of malpractice would presumably be protected from an order to appear pursuant to Federal Rule of Civil Procedure 45(c)(3)(B)(iii).

- The Conference is a non-profit entity, incorporated only in the District of Columbia.  Affidavit of Linda Hunt, ¶ 2, R. 21, Page ID #163.

- The Conference's headquarters and offices are in Washington, D.C.  *Id*. ¶ 14, R. 21, Page ID #164.

- The Conference has no offices and maintains no facilities, employees or agents in the State of Michigan.  *Id*. ¶¶ 30, 32, R. 21, Page ID #166.

- The decisions of all Archbishops and Bishops of the Roman Catholic Church, whether in Michigan or elsewhere, are independent from the USCCB and are not actions of the USCCB.  *Id*. ¶¶ 21-25, R. 21, Page ID #165.

- The USCCB does not direct, oversee, or supervise Bishops' activities on matters concerning the administration of their Diocese, or of the parishes that are part of the Diocese, in Michigan or elsewhere.  *Id*.

- Neither the USCCB nor its predecessor entities are registered to do business in Michigan and they do and did not maintain an agent for service of process in Michigan.  *Id*. ¶ 30, R. 21, Page ID #166.

- The USCCB has not applied for, or obtained, permission to conduct business in Michigan.  *Id*. ¶ 31, R. 21, Page ID #166.

- The USCCB did not maintain, nor did it have any interest in real or personal property in Michigan at any time relevant to Plaintiff's cause of action.  *Id*. ¶

33, R. 21, Page ID #166.

- The directives referenced in Plaintiff's Complaint [hereinafter "the ERDs"] were not written in, or issued from, Michigan. *Id.* ¶ 42, R. 21, Page ID #167.

- The Conference did not direct or enforce the application of the ERDs in Michigan, or elsewhere. *Id.* ¶ 43, R. 21, Page ID #167.

- The USCCB does not credential doctors, hospitals, or other health care providers. *Id.* ¶ 44, R. 21, Page ID #167.

- The USCCB has no official relationship to, or authority to control, supervise, or direct the entity Plaintiff describes as "Catholic Health Ministries" or any hospitals it is associated with, either in Michigan or elsewhere. *Id.* ¶ 29, R. 21, Page ID #166.

**C.    A transfer for convenience would also have been appropriate.**

Even if some arguable, minimal ground for venue in the Eastern District could be found, a transfer for purposes of convenience would have been appropriate and well within the discretion of the Court.  Thus, there was no error with regard to the District Court's analysis of the venue issues, and the transfer was proper.

**CONCLUSION & REQUEST FOR RELIEF**

The District Court had neither general personal jurisdiction nor specific

personal jurisdiction over the USCCB.  The District Court's dismissal was therefore proper.  The Sixth Circuit should affirm the District Court's dismissal and order any other relief that justice requires.

/s/ Cameron R. Getto
Cameron R. Getto
ZAUSMER, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334
(248) 851-4111/Fax: (248) 851-0100
cgetto@zacfirm.com

Attorney for Defendant-Appellee United States Conference of Catholic Bishops

Dated: March 17, 2016

## CERTIFICATE OF COMPLIANCE

I, Cameron R. Getto, certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief has been prepared in proportional typeface using Times New Roman 14-point font. Exclusive of the portions of the brief exempted by Rule 32(a)(7)(B)(iii), the brief contains 9,879 words, which is within the allowable limit under the Sixth Circuit and Federal Rules of Appellate Procedure.

/s/ Cameron R. Getto
Cameron R. Getto

# ADDENDUM

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Record Entry Number | Document Description | Page Number of Electronic Record |
|---|---|---|
| R. 14 | Notice of Special Appearance | Page ID #65 |
| R. 21 | Affidavit of Linda Hunt | Page ID #161 |

{00304093}

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2016, I electronically filed the foregoing document through the court's electronic filing system, and that it has been served on all counsel of record through the court's electronic filing system.

/s/ Cameron R. Getto
Cameron R. Getto
Attorney for Defendant-Appellee United States Conference of Catholic Bishops

{00304093}